# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HUBERT A. M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-CV-00297-SH |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Hubert A. M. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") partially denying his claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's partial denial of benefits.

**I.     General Legal Standards and Standard of Review**

Under the Social Security Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D). A medically determinable impairment must be established by "objective medical evidence"—such as medical signs and laboratory findings—that derive from an "acceptable

medical source," such as a licensed or certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921; *see also id.* §§ 404.1502(a), 416.902(a) (acceptable medical source); *id.* §§ 404.1513(a)(1), 416.913(a)(1) (objective medical evidence). A plaintiff is disabled under the Act only if these impairment(s) "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920.[1]

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the [administrative] record as a

---

[1] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps, assuming the impairment is not conclusively presumed to be disabling. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History

Plaintiff, then a 47-year-old male, applied for Title II and Title XVI disability benefits on October 14, 2015, with a protective filing date of September 17, 2015 for the Title II application. (R. 21, 191-200, 699.) In his applications, Plaintiff alleged an initial disability onset date of August 1, 2015, which he later amended to September 11, 2015. (R. 191, 195, 232.) Plaintiff claimed he was unable to work due to neck pain, pain and numbness in his arms and hands, and high blood pressure. (R. 235.) Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 110-113, 116-120, 122-127.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which the ALJ conducted on September 27, 2017. (R. 41-63, 129-130.) The ALJ issued a decision on December 12, 2017, denying benefits and finding Plaintiff not disabled. (R. 21-35.) The Appeals Council denied review, and Plaintiff appealed. (R. 1-6, 770-771.)

On May 28, 2019, the District Court granted the Commissioner's motion to remand, returning the case to the Commissioner for further proceedings; the Appeals Council then sent the case back to the ALJ to resolve certain additional issues. (R. 772-782.) On remand, the ALJ held a second hearing on March 2, 2020. (R. 710-740.) Thereafter, the ALJ issued a decision on March 17, 2020, finding that Plaintiff was disabled as of November 23, 2017, under Medical-Vocational

Rule 201.14.² (R. 699.) The ALJ, however, found Plaintiff was not disabled before November 23, 2017, because he could perform other work existing in the national economy. (R. 682-700.) Plaintiff filed no exceptions, and the Appeals Council declined to assume jurisdiction, rendering the decision final on May 17, 2020. 20 C.F.R. §§ 404.984(d), 416.1484(d). Plaintiff filed this appeal within 60 days of the decision becoming final. (ECF No. 2.) *See also* 42 U.S.C. § 405(g).

### III. The ALJ's Decision

In his decision, the ALJ found that Plaintiff met the insured status requirements for Title II purposes through September 30, 2018. (R. 689.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 11, 2015. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine and (2) left arm status post compartment syndrome and fasciitis. (*Id.*) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (*Id.*)

After evaluating the objective evidence, the opinion evidence, and Plaintiff's testimony, the ALJ concluded that Plaintiff had the residual functional capacity to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," with the following additional limitations:

> The claimant is able to occasionally lift and/or carry ten pounds. The claimant is able to frequently lift and/or carry ten pounds.³ The claimant can stand and/or walk

---

² The Medical-Vocational Rules (the "grids") are found at 20 C.F.R. pt. 404, subpt. p, App. 2. Under Rule 201.14, a person is automatically determined to be disabled if they are (1) closely approaching advanced age; (2) their education is high school graduate or more but does not provide direct entry into skilled work; and (3) their previous work is skilled or semiskilled, but the skills are not transferrable.

³ The Court notes here that the ALJ's opinion contains an error in its articulation of Plaintiff's RFC. The ALJ's second statement—that Plaintiff can *frequently* lift and/or carry ten pounds—is consistent with the regulations' formulation of light work, not sedentary work. *Compare* 20 C.F.R. §§ 404.1567(b), 416.967(b) *with id.* §§ 404.1567(a), 416.967(a). At the hearing, the ALJ provided the VE a hypothetical regarding frequent lifting or carrying "up to 10 pounds" (R. 737), which may be what the ALJ intended here. However, because Plaintiff did not raise this issue on appeal, and because

4

at least two hours in an eight-hour workday. The claimant can sit at least six hours in an eight-hour workday. The claimant should avoid work above shoulder level and can no more than frequently use the left hand for handling or fingering.

(R. 689-690.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 690-697.)

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a CNC Machine Operator, Break Press Operator, or Welder. (R. 697.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that prior to November 23, 2017, Plaintiff could perform other sedentary work that existed in significant numbers in the national economy, such as a Stuffer and Sorter. (R. 698-699.) Accordingly, the ALJ concluded Plaintiff was not disabled prior to November 23, 2017. (R. 699.)

## IV. Issues

Plaintiff raises two related allegations of error in his challenge to the partial denial of benefits: (1) the ALJ failed to properly consider medical source opinions, particularly, those of Dr. James Mayoza; and (2) the ALJ failed to properly consider Plaintiff's subjective allegations. (ECF No. 16 at 5-11.) The undersigned agrees with both contentions.

## V. Analysis

### A. The ALJ's Evaluation of Plaintiff's Subjective Symptoms is not Supported by Substantial Evidence.

The undersigned first considers whether the ALJ properly evaluated Plaintiff's subjective allegations of pain and symptoms. After reviewing the ALJ's decision, this Court finds he did not.

---

the ALJ explicitly limited Plaintiff to sedentary work, included in Plaintiff's RFC that he may only occasionally lift and/or carry ten pounds, the Court finds this error harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("certain technical errors [are] 'minor enough not to undermine confidence in the determination'" of a matter (quoting *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir.1993))).

1. **The Standards for Evaluating Pain and Other Symptoms**

Upon review, the Court is limited to determining the propriety of the legal standards the ALJ applied and whether the decision is based on substantial evidence. *Grogan*, 399 F.3d at 1261. However, in determining whether a decision was based on substantial evidence, one of the Court's duties is to review the ALJ's evaluation of Plaintiff's subjective symptoms, including pain. *See generally* 20 C.F.R §§ 404.1529, 416.929. When evaluating a claimant's symptoms, the ALJ uses a two-step process.[4] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b); *see also* SSR 16-3p, at *3. Second, once such impairment(s) are established, the ALJ must then evaluate the intensity and persistence of the symptoms so he can determine how the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also* SSR 16-3p, at *3.

"In evaluating an individual's symptoms . . . [t]he . . . decision must . . . be consistent with and supported by the evidence[] and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *10. As is true generally, an ALJ "may not ignore evidence that does not support his decision,

---

[4] Tenth Circuit precedent has characterized this as a three-step process—(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all of the objective and subjective evidence, the claimant's pain was, in fact, disabling. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The analysis under SSR 16-3p comports with this process. *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016). The policy also no longer uses the term "credibility" to describe this analysis. SSR 16-3p, at *2.

especially when that evidence is 'significantly probative.'" *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

### 2. Plaintiff's Symptoms and the ALJ's Decision

In his decision, the ALJ noted Plaintiff's symptoms as including the following, citing testimony from the hearings on September 27, 2017, and March 2, 2020:

> He described pain in his neck when turning and numbness in his arms and hands. He dropped things and had difficulty looking down. Low back pain radiated to his legs and caused numbness.
>
> Physically, the claimant estimated he could stand for 15 minutes, sit for 20 minutes, and lift 5 pounds without significant pain. He laid down or reclined for 60 to 65 percent of the day. Pain reduced his ability to stand and he had difficulty gripping and using his hands. He was limited in his ability to grocery shop, do laundry, and cook. He took breaks after an activity like chopping because his hands drew up. Pain made it difficult for him to shower or shave. He needed back surgery[] but could not afford it. Spinal injections provided some relief. He went fishing last May. He had community service, but it [was] difficult for him because of pain and his hands.
>
> At the most recent hearing, the claimant described unresolved pain in his neck and back as 7 out of 10 on a 10-point pain scale. He continued to experience a sensation down his left arm. He had numbness in his hips and feet. He could lift a gallon of water and sit 20 minutes. He used a cart at the grocery store and stumbled without it. He occasionally used a walking stick. He could carry in the groceries but may rest in the recliner before putting things away. He did his own laundry, but it was hard to bend over. He continued to drop things.

(R. 690.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms but held that Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of those symptoms were not fully supported by the record. (R. 691.) As Plaintiff rightly points out, the ALJ made this determination almost entirely based on evidence purportedly taken from Plaintiff's court-referred counseling sessions. (R. 695 ("Conflicting with the degree of limitation alleged at the hearing and in statements made to

providers, the record contains evidence of services at Human Skills and Resources . . . .").) The ALJ held that "reported activities[,] such as fishing, walking to relieve boredom, traveling to Missouri, attending meetings where he obtained a sponsor, attending church and counseling . . . [and] present[ing] [as] calm and relaxed/with appropriate affect" were "not fully consistent with [Plaintiff's] allegations of disabling pain." (*Id.*) Elsewhere, he stated, "[t]he performance of these activities, specifically fishing and walking to relieve boredom, undermines the claimant's allegations that he could not stand or walk longer than twenty minutes or that he spent the majority of the day reclining or laying down." (R. 696.) As a result, the ALJ found that the RFC—which allows two hours a day walking/standing, and six hours of sitting—was reasonable, and that Plaintiff "could function within those limitations without experiencing significant exacerbation of his symptoms." (R. 689-690, 697.)

In making this determination, the ALJ mischaracterized the counseling records and ignored Plaintiff's testimony. First, there is no evidence that Plaintiff walked to relieve boredom. (R. 695.) The ALJ draws Plaintiff's statement about walking from a court-referred group therapy session Plaintiff attended on June 27, 2016. (*Id.* (citing R. 576).) During this session, in response to a discussion on situations that could involve alcohol and how to deal with boredom during sobriety, Plaintiff stated that a way to deal with boredom could be "walking." (R. 576.) Plaintiff did not state that he himself walked to relieve boredom. (*Id.*) This is an important distinction that the ALJ fails to address, particularly as there is no evidence cited from the record elsewhere on this issue. Additionally, the ALJ also fails to discuss Plaintiff's specific testimony about his walking. During the second hearing, Plaintiff testified, "*before* I got hurt, I walked." (R. 734 (emphasis added).) Plaintiff testified to walking up and down a paved city trail but having to stop frequently and utilize

8

a walking stick to make it back. (R. 735.) None of this additional evidence or context was discussed by the ALJ.

Second, regarding Plaintiff's fishing, there is evidence of a single post-injury fishing outing, which Plaintiff testified lasted only a few minutes and was compromised by his impairments. (R. 54-55, 477.) The fishing that the ALJ refers to was mentioned during a group counseling session on May 31, 2017, where the entirety of the evidence is, "Client reported a good weekend, went fishing." (R. 477.) That is the extent of the record evidence regarding fishing during the period at issue other than Plaintiff's subjective statements. Plaintiff testified in more detail about this fishing trip during the September 2017 hearing, stating that the last time he went fishing was May 2017, and that his back went out and he lost his pole after "four or five minutes" because his hands "start[ed] shaking and drawing up." (R. 54-55.) The ALJ fails to discuss Plaintiff's own testimony on this matter, relying instead on a few notes in a counseling report that shed no light on his functional limitations. In declining to consider the entire record while disputing the intensity, persistence, and limiting effects of Plaintiff's subjective symptoms, the ALJ ignores probative evidence. This is improper. *See Briggs*, 248 F.3d at 1239.

The same thing happens in the ALJ's characterization of Plaintiff's driving and church attendance. For example, during Plaintiff's individual counseling sessions he reported he "was leaving for Missouri and couldn't come in" the next day. (R. 515 (cited by the ALJ at R. 695).) He did not, however, state whether he drove himself, what position he sat in while traveling, or how many stops he took between Oklahoma and Missouri. (*Id.*) In fact, in the very next sentence in the December 22, 2016, report, Plaintiff is noted as stating that he had "a lot of pain." (*Id.*) This evidence says nothing about whether Plaintiff could sit and drive—without reclining—for multiple hours. (*Id.*) Additionally, at the second hearing, Plaintiff reported that when he traveled to

9

Missouri, either his wife drove and he reclined, or he drove and they were forced to make numerous stops and switch drivers throughout. (R. 733-734.) This evidence is not, on its face, in contradiction to Plaintiff's subjective statements regarding his symptoms.[5] The ALJ both fails to address Plaintiff's additional testimony and fails to explain why he views the counseling report as contrary to Plaintiff's limitations.

Similarly, though counseling records substantiate Plaintiff's reports that he attended church when he could, Plaintiff also testified that when he went, he did not stay the entire time, and attended for only the sermon because of his pain. (R. 54, 602, 731-732.) The ALJ failed to address this portion of testimony when considering Plaintiff's church attendance. Additionally, the ALJ failed to explain how attending church infrequently, and only for part of the service, conflicted with Plaintiff's reports of pain.

The ALJ also does not address how Plaintiff getting a sponsor and attending court-referred counseling[6] could be seen as inconsistent with Plaintiff's subjective symptoms. (R. 695.) It is unclear to this Court why obtaining a sponsor—presumably for Plaintiff's alcohol-related difficulties—discounted Plaintiff's complaints of pain or in any way offered evidence regarding his ability to walk, sit, stand, or perform work-related functions. Similarly, although the records indicate Plaintiff's counseling sessions lasted up to ninety minutes, it is devoid of any evidence of

---

[5] *See e.g. Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987) (noting that "sporadic performance [of activities] does not establish that a person is capable of engaging in substantial gainful activity"); *see also Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983) (per curiam) (finding claimant's activities—including "an occasional trip with his brother in a camper, and on one occasion, driving to California"—were insufficient, without further evidence, of establishing that the claimant was capable of engaging in substantial gainful activity).

[6] To the extent the ALJ is referring to marriage counseling, all that is included in the record is a statement from Plaintiff that his wife did not want to do marriage counseling and that "they will do counseling at church." (R. 530 (cited at R. 695).) It is not clear that any such counseling occurred, much less what this indicates regarding Plaintiff's pain symptoms.

Plaintiff's posture or position during the sessions—*i.e.* whether he was allowed to stand, sit, or even recline—or what other accommodations he may have been provided. (*See generally* R. 448-616.) Nowhere in the decision does the ALJ address why attending counseling undermines Plaintiff's reports of pain or his alleged inability to sit, stand, or walk.

Finally, the ALJ notes that Plaintiff "presented calm and relaxed/with appropriate affect" at a number of sessions. (R. 695.) Again, the ALJ fails to explain why Plaintiff presenting as calm during counseling sessions that were intended to treat his substance abuse speaks to his symptoms. The Court finds no support in the record cited for the ALJ's statement of inconsistencies between Plaintiff's activities and his allegations of disabling pain.

Putting aside the miscited counseling notes, there is nothing left in the ALJ's decision supporting his findings on Plaintiff's symptoms and their limiting effects. Virtually all of the evidence cited by the ALJ endorses Plaintiff's complaints of pain, continuing physical degeneration, reduced range of motion, and efforts to obtain treatment. (R. 690-697.) Where the ALJ notes evidence that could potentially be seen as supporting a finding of inconsistency—often with no explanation to guide the reviewer—it is incomplete. For example, the ALJ states, "[b]y October 26, 2015, the claimant was no longer demonstrating any radicular symptoms." (R. 692.) This implies that, by this date, such symptoms were resolved. But, while the ALJ cites examination notes from one date (*id*. (citing R. 362-63)), he later cites other evidence showing radiculopathy in April 2016, July 2016, and January 2019 (R. 696 (citing R. 630, 636, 917)). So, the Court is left only with the ALJ's finding that Plaintiff had continued radiculopathy but self-reported no symptoms once.

Similarly, the ALJ notes in passing that one pain doctor, Dr. Bhakta, stated Plaintiff was a rambling and difficult historian who was not completely honest. (R. 692.) Yet, the ALJ does not

11

assert that this comment related to Plaintiff's claimed symptoms of pain,[7] and, as he notes, Dr. Bhakta repeatedly prescribed pain-related treatments for Plaintiff, crediting his symptoms. (R. 692, 694; *see also* R. 680-681.) The Court is left to guess whether and to what extent this passing note affected the ALJ's analysis.

As such, there are no *supported* reasons given in the ALJ's decision for the weight he assigned Plaintiff's symptoms. *See* SSR 16-3p at *10 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). The ALJ's decision, in this regard, is therefore not supported by evidence a reasonable mind might accept as adequate.

### B. The ALJ Improperly Weighed Dr. Mayoza's Medical Opinion.

A similar issue arises when this Court considers the propriety of the ALJ's evaluation of Dr. Mayoza's medical opinion.

#### 1. The Factors for Weighing Medical Opinions

For claims filed before March 27, 2017, the ALJ gives controlling weight to a medical opinion from a claimant's treating source, as long as the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Generally, the court will consider a treating source to be a physician who "has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Id.* §§ 404.1527(a)(2), 416.927(a)(2). Such an

---

[7] Although not cited by the ALJ, the same treatment notes also state that Dr. Bhakta and Plaintiff "discussed the importance of being honest since [Plaintiff] did not report correct use of alcohol or the fact that he had been imprisoned because of intoxication." (R. 681.)

"ongoing treatment relationship" exists "when the medical evidence establishes that [the claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required" for the medical condition. *Id.* §§ 404.1527(a)(2), 416.927(a)(2); *see also generally Doyal v. Barnhart*, 331 F.3d 758, 762-63 (10th Cir. 2003).

If a physician is not deemed a treating source, and thus not given controlling weight, the ALJ still must determine what weight to assign the opinion. Factors in this evaluation include (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship and frequency of examination; (3) the degree to which the opinion is supported by relevant evidence; (4) the opinion's consistency with the record as a whole; (5) the specialization of the medical source; and (6) any other factors that may support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### 2. Dr. Mayoza's Opinion and the ALJ's Decision

On November 3, 2015, Dr. Mayoza examined Plaintiff and reviewed his MRIs.[8] (R. 368-370.) Dr. Mayoza's examination indicated movement restricted by pain and positive straight leg tests. (R. 370.) The MRIs showed "quite prominent protrusion at L4 with protrusion and stenosis and associated osteophytes at the L5 level" and, for the cervical spine, "multilevel disc osteophyte complexes with spondylosis with HNP's at C4-5, C5-6, and C6-7." (*Id.*) Dr. Mayoza then recommended surgery, potentially with fusion, and noted, "[w]ithout this necessary surgery to the cervical and lumbar spine, I do not believe that this patient will improve." (*Id.*) Among other

---

[8] The ALJ noted that Dr. Mayoza listed the date of the MRIs as September 31, 2015, rather than August 11, 2015 and September 30, 2015. (R. 693.) However, the ALJ did not "reject Dr. Mayoza's own interpretation of the imagining" (*id.*), so this does not appear to relate to the weight the ALJ gave Dr. Mayoza's opinion.

things, Dr. Mayoza opined that Plaintiff could not sit or stand/walk for more than two hours a day.[9] (R. 367.)

In his decision, the ALJ did not assign Dr. Mayoza's opinion the "controlling weight" reserved for treating physicians. (R. 696.) This was proper. As the ALJ correctly noted, there is only record evidence that Plaintiff visited Dr. Mayoza once. (R. 368-370, 692-693.) As such, Plaintiff and Dr. Mayoza cannot be said to have established an ongoing treatment relationship with any frequency. *See Doyal*, 331 F.3d at 762-63. This is not to say, however, that the ALJ's analysis of Dr. Mayoza's opinion ends there. He must also consider the factors set out in 20 C.F.R. §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6). (R. 693.)

The same problems that infected the ALJ's analysis of Plaintiff's symptoms recur here. The ALJ appears to have given Dr. Mayoza's opinions only "some" weight based on the same counseling records from Human Skills and Resources noted above, with the added support of an examination by Dr. Leslie Whitt. (R. 696.) As for the counseling records, as previously discussed, they do not provide any evidentiary support for the ALJ's decision, particularly given the ALJ's failure to account for Plaintiff's testimony.

As for Dr. Whitt's examination, it is not clear what in that examination would result in less weight being given to any part of Dr. Mayoza's opinion, particularly the portions apparently rejected by the ALJ regarding limitations on Plaintiff's ability to sit, stand, and walk. On April 11, 2017, Dr. Whitt examined Plaintiff at the Bedlam Evening Free Clinic for complaints of neuropathic pain. (R. 664-665.) As noted by the ALJ, Dr. Whitt found Plaintiff had normal posture and gait, tenderness to palpation on his lumbar spine, and limited range of motion in his neck. (R.

---

[9] Plaintiff does not assert any error in the ALJ's treatment of Dr. Mayoza's opinions regarding the use of his hands. (ECF No. 16 at 8.)

14

666, 696.) Neurologically, Dr. Whitt found normal coordination, muscle strength and tone, no tremors, and normal reflexes. (*Id*.) Dr. Whitt then prescribed medication for Plaintiff's pain. (R. 667.) Other than perhaps the reference to muscle strength (Dr. Mayoza found Plaintiff's grip strength "decreased bilaterally" (R. 370)), it is not clear what inconsistencies there are between Dr. Whitt's examination and Dr. Mayoza's. And, the ALJ provides none.

Again, the Court has examined the remainder of the ALJ's decision, searching for an analysis of the required factors and anything articulated by the ALJ to support his decision to reject Dr. Mayoza's opinions and find that Plaintiff could "stand and/or walk at least two hours" and "sit at least six hours in an eight-hour workday" (R. 690). Again, the Court finds a lack of substantial evidence to support the ALJ's decision.

## VI. Conclusion

The ALJ did not apply the correct legal standards, and the Commissioner's decision is not supported by substantial evidence, requiring reversal. On remand, the Commissioner should properly consider Plaintiff's subjective symptoms, Dr. Mayoza's opinion, and any other evidence, in light of the record as a whole.

The Commissioner's decision finding Plaintiff not disabled between September 11, 2015, and November 23, 2017, is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 23rd day of June, 2021.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT